2019 IL App (2d) 190525-U
No. 2-19-0525
Order filed December 17, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF SEYMORE BARRY LIPIN, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Deceased. | ) | |
| | ) | |
| | ) | No. 09-P-248 |
| | ) | |
| (Judith Lipin, Indiv. And as Trustee of the | ) | |
| Lipin Marital Trust, Petitioner-Appellant, | ) | Honorable |
| Hecht Schondorf, LLC, Respondent- | ) | Joseph V. Salvi, |
| Appellee.) | ) | Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Zenoff and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: We affirmed the trial court's denial of petitioner's contempt petition: although petitioner asserted that the court erred in finding a lack of jurisdiction, the court actually denied the petition on the merits and petitioner did not contest that basis.

¶ 2   Petitioner, Judith Lipin, appeals an order denying her petition for indirect civil contempt against respondent, Hecht Schondorf, LLC. Petitioner contends solely that the trial court erred in holding that it did not have personal jurisdiction over respondent. Because the trial court denied the petition on its merits, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    This case arises out of a proceeding to administer the estate of the late Seymore Barry Lipin.  On February 28, 2019, petitioner, individually and as trustee of the Lipin Marital Trust (Trust), filed a petition to hold respondent, a law firm, in indirect civil contempt.  The petition alleged as follows.  In February 2018, a settlement was reached under which petitioner and the Trust were to receive $10,000 per month, plus $150,000 within six months, from Lipin Enterprises (LE) and related "Business Entities."  The trial court retained jurisdiction to enforce the settlement.  On November 30, 2018, the court entered an order stating, "Payments due under the settlement agreement to [petitioner and the Trust] are to continue to be made."  Respondent's agent, attorney Adam Hecht, was in court when the order was entered, and he received a copy of the order.

¶ 5    The petition continued as follows.  On November 30, 2018, LE had a balance of $132,173.92 in its sole bank account, and the $150,000 had not been paid.  On or about January 2, 2019, Mary and Leon Deutsch, the sole officers of LE, announced their resignations, effective January 9. 2019.  On January 9, 2019, one of them wired $30,325.43 to respondent.  Respondent accepted and kept the money.  The payment was derived from "financing designed through a *** real estate exchange" so as to enable LE to pay the $150,000 due petitioner and the Trust.

¶ 6    The petition alleged further that, by accepting the payment, respondent had "participated integrally in preventing the obeying of the court order of November 30, 3018 [*sic*]."  The court's contempt power was not limited to the parties to the suit but extended to anyone who had actual notice of the order and its contents.  By taking and keeping the $30,325.43, respondent had participated in the violation of the November 30, 2018, order.  Petitioner prayed for an order finding respondent in contempt and compelling it to return the money to LE.

¶ 7    On April 2, 2019, respondent answered the petition as follows.  In receiving the payment from LE, respondent had not committed contempt but had simply accepted "legitimately incurred

attorney fees paid by [LE] to its counsel." At the time of the settlement, respondent was representing LE and the other business entities. On January 9, 2019, the only officers of LE resigned and paid part of LE's outstanding fees to respondent, "in order to ensure continued representation." LE still owed respondent substantial fees. Shortly afterward, respondent withdrew as counsel to LE and the other business entities.

¶ 8    Respondent argued that the contempt petition had not set forth exactly what respondent had done wrong. Respondent could not be held in contempt for accepting earned attorney fees. LE had not paid the $150,000 due petitioner, as it had insufficient funds in its bank account to do so. However, petitioner had cited no authority obligating respondent to examine its client's checking account balance before accepting payment, and no such authority existed. What petitioner was really alleging was that LE had breached a contractual obligation to pay the $150,000.

¶ 9    On May 9, 2019, petitioner replied to respondent's answer. She argued that respondent had been aware all along that LE was required to pay her and the Trust $150,000 and had also known of LE's financial condition. In August, September, and October 2018, Hecht had assured petitioner's attorney that the real-estate exchange would soon close and that the $150,000 would be wired to petitioner promptly thereafter. At the November 30, 2018, hearing, it was revealed that the closing had taken place but that the $150,000 had not been paid. As of January 9, 2019, respondent knew or should have known that the $150,000 still had not been paid. By retaining the fees from LE, respondent had helped to thwart the November 30, 2018, order.

¶ 10    On May 2, 2019, the court heard arguments on the petition for indirect civil contempt (and other matters). The judge asked petitioner what order respondent had violated by accepting its fees. Petitioner responded that respondent had received actual notice of the November 30, 2018,

order and knew both that $150,000 was to be transferred from LE to petitioner and the Trust and that LE's bank account could not satisfy the obligation were money withdrawn and paid to respondent. The judge noted that the amount paid to respondent had not been earmarked for petitioner and the Trust. He asked how a creditor could be in contempt for accepting a preexisting debt from a debtor. Petitioner responded that respondent was not merely a creditor but had been on notice of LE's legal obligation. By taking the fees, it "undercut the ability of [LE] to pay the ordered amount."

¶ 11 Respondent argued that it had been under no obligation to monitor LE's bank account and that holding it in contempt would discourage lawyers from representing clients who might be in any kind of financial trouble. Respondent had done no more than accept fees that it had been owed and had had no responsibility to ensure that LE had sufficient funds to meet other obligations.

¶ 12 Petitioner replied that respondent had had bank account statements going back to before November 30, 2018, and had known that LE was short of funds and had to close the real-estate transaction in order to meet its obligation to petitioner and the Trust. Respondent countered that petitioner had no standing to seek the court to order respondent to return money to LE. Respondent argued further that the November 30, 2018, order did not bar it from receiving fees from LE but required only that payments under the settlement continue.

¶ 13 In ruling on the petition, the judge stated as follows. There would be a "dangerous, slippery slope if [the court] started holding law firms in contempt for accepting fees from a party *** that later is unable to meet its obligations in a court order." The judge suggested the example of an attorney who seeks to collect fees from a party who has been ordered to pay maintenance to his or her ex-spouse. There was also the potential issue of standing. That day, the court entered a written order denying the petition for the reasons given on the record.

¶ 14    Petitioner moved to reconsider the denial of the petition. She argued that respondent could be held in contempt, because the proceeds from the closing of the real-estate transaction had been "assigned" to her for the payment of the $150,000 due under the settlement.

¶ 15    On May 7, 2019, the court heard the motion to reconsider. The parties stood on their previous arguments. The judge asked petitioner whether the court could hold LE's accounting firm in contempt for accepting fees from LE. Petitioner responded, "We're not asking for the accountant because the accountants were not aware of the court order." The judge asked whether, had the accounting firm been aware of the order, the court would have the power to hold it in contempt. Petitioner responded that, had the firm known of the order and the requirement that $150,000 be paid to her, then it "might" be held in contempt.

¶ 16    The judge stated:

"The Court disagrees with you ***. The Court cannot hold a law firm or any other creditor who is not [a] party to the litigation in contempt simply because they knew or should have known that by accepting payment that [*sic*] they—as far as the Court is concerned, as far as the Court knows is entitled to was at least due [*sic*], were holding money to prevent somebody else from collecting the money but rather they were due that money.

That in and of itself, this Court would not have jurisdiction to hold that entity, in this case that law firm, in contempt.

The Court's *** not going to reconsider its ruling ***."

¶ 17    After the court denied her motion to reconsider, petitioner timely appealed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, petitioner argues that the judgment was erroneous, for one reason only: the court erred in holding that it lacked jurisdiction over respondent. Petitioner relies on the judge's

statement at the hearing on her motion to reconsider. She does not reference the judge's original explanation of the actual judgment. She contends that, under *In re Marriage of Marshall*, 278 Ill. App. 3d 1071, 1079 (1996), a court can hold a nonparty in contempt of a court order if, as here, the nonparty had actual notice of the order and its contents.

¶ 20 Respondent argues that the judgment was based not on jurisdiction but on the merits of the petition and that the judge's explanation of the actual judgment proves this. Respondent notes that this explanation did not mention jurisdiction. Moreover, respondent observes, petitioner's motion to reconsider did not mention jurisdiction at all. Respondent also contends that the basis for the denial of the motion to reconsider was at least in part the same as the basis for the judgment: the judge specifically stated, "The Court's *** not going to reconsider its ruling."

¶ 21 We agree with respondent that the judgment can and must be affirmed on the basis that the judge originally gave: respondent did not commit contempt merely by accepting a debt that was due from LE, even if it did so knowing that it might make it more difficult for LE to meet its obligation to petitioner and the Trust. Even if the judge later added a jurisdictional rationale for the judgment—which we need not decide—that was at most an additional ground on which to deny petitioner relief. The court never disowned the original basis for its judgment.

¶ 22 Of course, we need not decide whether the nonjurisdictional basis for the judgment was correct. Petitioner does not argue that the court erred in relying on this basis. Thus, she has forfeited any contention that the judgment was erroneous on the merits. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 23 At the close of its brief, respondent states that, if we find that this appeal is frivolous, relief should be granted under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) "if the Court so chooses." Given the cursory character of the request, we decline to impose this serious sanction.

¶ 24                                III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 26    Affirmed